Connie BURTON, et al., Plaintiffs,

v.

TAMPA HOUSING AUTHORITY,
Defendant,

and

United States of America, Intervenor.

No. 8:99–CV–1238–T–26B.

United States District Court,
M.D. Florida,
Tampa Division.

May 23, 2000.

Guy M. Burns, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for plaintiffs.

Alan D. Stewart, Butler, Burnette Pappas, Tampa, FL, for Tampa Housing Authority, defendant.

Anita M. Cream, U.S. Attorney's Office, Orlando, FL, for U.S., defendant.

## ORDER

LAZZARA, District Judge.

This case involves Tampa Housing Authority's (THA) "One Strike" policy to evict tenants if a member of their household, unbeknownst to them, is arrested for participation in drug-related criminal activity. Plaintiff Connie Burton, a THA tenant since 1984, is subject to eviction based on the arrest of her son, a household resident, for participating in an illegal drug transaction. The transaction allegedly occurred on THA property, but outside of Burton's apartment. Burton maintains that she was unaware of her son's alleged participation in criminal activity. On April

29, 1999, THA notified Burton that her Dwelling Lease Agreement (Lease) would be terminated. On May 12, 1999, THA initiated eviction proceedings against Burton.[1]

Burton brought the current lawsuit seeking to invalidate the actions taken by THA in terminating her Lease and initiating eviction proceedings.[2] Burton claims violations of the following: Equal Protection Clause; Due Process Clause; First Amendment; Administrative Procedure Act; Florida Residential Landlord and Tenant Act; and Public Housing Act. On December 23, 1999, the Court permitted the United States to intervene. The Court has pending for its consideration Plaintiffs' Renewed Motion for Summary Judgment (Dkt.45); Defendant's Motion for Summary Judgment (Dkt.52); and the United States' Motion to Dismiss (Dkt.60). For the reasons that follow, the Court grants THA's motion for summary judgment.

The Public Housing Act states that each public housing agency shall utilize leases which "provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of the tenancy[.]" 42 U.S.C. § 1437d($l$)(6). The federal regulations addressing leases under the Public Housing Act state that it is the tenant's obligation to "assure that the tenant, any member of the household, a guest, or another person under the tenant's con-

---

1. To the extent that Burton makes factual assertions that her son's inclusion as a household member on her Lease was a condition of his employment with THA, the Court finds that such facts are immaterial to the claims as framed by Burton.

2. At the commencement of this action, Burton was joined by four other Plaintiffs. Those four other Plaintiffs have dismissed their cases against THA. Therefore, the Court confines its discussion to Burton's claims.

trol, shall not engage in ... [a]ny drug-related criminal activity on or near such premises." 24 C.F.R. § 966.4(f)(12)(i)(B). The regulations state that "[a]ny drug-related criminal activity on or near such premises" are grounds for termination of a Public Housing lease. 24 C.F.R. § 966.4(*l*)(2)(ii)(B).

Under the terms of Burton's Lease, she is obligated "To assure that Resident, Members of Resident's household, guests (as defined herein) or other person under Resident's control, shall not (i) engage in any criminal activity, that threatens the health, safety, or peaceful enjoyment of THA's property by other residents of THA or employees of THA; or (ii) drug-related criminal activity (as defined herein) upon or within two hundred (200) feet of THA's property, and such criminal activity shall be grounds for termination of this Agreement." Furthermore, an addendum to the Lease states: "THA considers activity which threatens the health, safety or peaceful enjoyment of THA's property by other residents, THA's employees, representatives, contractors, and agents and/or law enforcement officials, or drug-related criminal activity (as defined herein) on or off THA's property, by Resident, members of Resident's household or guests (as defined herein) as a serious violation of the material terms of this Agreement. THA has adopted a 'One Strike' or 'Zero Tolerance' policy with respect to these types of serious violations as required by Federal law and/or regulation. Eviction proceedings which result from these types of serious violations of this Agreement are civil in nature, not criminal, and arrest and/or conviction of persons accused of these types of serious violations of this Agreement are not necessary as conditions to seek eviction." (Emphasis omitted.)

The Court notes that two Courts of Appeal have analyzed some of the issues that are the subject of the current controversy.

In *Chavez v. Housing Authority of El Paso*, 973 F.2d 1245 (5th Cir.1992), the El Paso Housing Authority initiated a forcible detainer action to evict a tenant based on the conduct of her son, a guest, in committing acts of violence on the premises in violation of the lease. The tenant sued for violation of the First Amendment right to freedom of association, the Equal Protection Clause, and the Due Process Clause. The Fifth Circuit held that the Housing Authority had not violated the tenant's constitutional rights.

In *Rucker v. Davis*, 203 F.3d 627 (9th Cir.2000), the Oakland Housing Authority's (OHA) leases require tenants to assure that members of their household are not involved in drug-related criminal activity. OHA interprets this lease provision as authorizing eviction of a tenant based on a household member's drug-related criminal activity regardless of whether the tenant knew or reasonably should have known of the household member's drug-related criminal activity. In *Rucker*, OHA commenced wrongful detainer actions in California state court against several tenants after discovering a household member or guest of each tenant engaging in drug-related criminal activity on or near the public housing premises. The tenants filed suit in federal district court. The district court granted a preliminary injunction in favor of tenants. The Ninth Circuit reversed, upholding OHA's application of § 1437d and holding, *inter alia*, that OHA had not violated the tenants' First Amendment right to freedom of association.

■ First, the Court concludes that § 1437d clearly and unambiguously authorizes THA's policy to initiate eviction proceedings based on the actions of household members. Burton argues that the Public Housing Act and its implementing regulations require the THA to exercise discretion in determining whether to evict a

tenant. In support, Burton points to the terms of the Lease and a section of the federal regulations authorizing discretion on the part of THA. The Lease states: "In deciding to evict for criminal activity, THA shall have the discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by or awareness of household members, and the effects the eviction would have both on household members not involved in the proscribed activity and on other residents of THA. In appropriate cases, THA may permit continued occupancy by remaining household members and may impose a condition that household members who engaged in the proscribed activity will not reside in nor visit the dwelling. THA may require a household member who has engaged in the illegal use of drugs to present credible evidence, as determined by THA, of successful completion of a treatment program as a condition to being allowed to reside in the dwelling." The federal regulations provide: "In deciding to evict for criminal activity, the PHA shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation of family members, and the effects the eviction would have on family members not involved in the proscribed activity. In appropriate cases, the PHA may permit continued occupancy by remaining family members and may impose a condition that family members who engaged in the proscribed activity will not reside in the unit. A PHA may require a family member who has engaged in the illegal use of drugs to present evidence of successful completion of a treatment program as a condition to being allowed to

reside in the unit." 24 C.F.R. § 966.4(l)(5)(i).

While the above provisions authorize public housing agencies to make eviction decisions on a case-by-case basis, they do not mandate such discretionary review. This is consistent with the general policy of the Public Housing Act to give local public housing authorities the maximum amount of responsibility in the administration of their programs. *See Gholston v. Housing Auth. of City of Montgomery*, 818 F.2d 776, 778 (11th Cir.1987); *Rucker*, 203 F.3d at 638–639.

Burton argues that the legislative history of § 1437d demonstrates that Congress intended case-by-case eviction determinations. Burton cites the following language: "This provision makes criminal activity grounds for eviction of public housing tenants if that action is appropriate in light of all the facts and circumstances.... This section would make it clear that criminal activity, including drug related criminal activity, can be cause for eviction only if it adversely affects the health, safety, and quiet enjoyment of the premises. The committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the PHA and the eviction court. For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity." S.Rep. No. 101–316 (1990). As in *Rucker*, the Court concludes the resort to legislative history is not necessary when the statute is clear. *See* 203 F.3d at 646.[3] In addi-

---

**3.** Moreover, the example cited in the history pertains to guests rather than household members. Thus, to some extent, the history is not clear as to whether a public housing

authority would be expected to conduct an individualized inquiry where a household member is arrested for drug related criminal activity.

tion, the Court finds that the Lease sufficiently incorporates the terms of § 1437d and the implementing regulations. Therefore, the Court will grant summary judgment in favor of THA on Counts IV and VI of the complaint.

■ Second, the Court concludes that THA is entitled to summary judgment on Burton's substantive due process, equal protection, and First Amendment claims. There is a rational basis for applying the One Strike Policy across-the-board to all tenants based on the actions of their household members. That rational basis includes the severity of drug-related crime in public housing, the high cost of requiring public housing agencies to litigate scienter, and the creation of a strong incentive to ensure that household members and guests of public housing tenants do not engage in illegal drug transactions. *See Rucker*, 203 F.3d at 643–644. Moreover, as discussed above, *Rucker* rejected First Amendment claims, and *Chavez* rejected due process, equal protection, and First Amendment claims. Following *Rucker* and *Chavez*, the Court will grant THA's motion for summary judgment on Burton's substantive due process,[4] equal protection, and First Amendment claims contained in counts I, II, and III of the complaint.

■ Third, the Court concludes that THA is entitled to summary judgment on Burton's procedural due process claim because Florida law provides the basic elements of due process. Public housing agencies are permitted to exclude from their grievance procedure an eviction involving drug-related criminal activity, providing that the laws of the jurisdiction require a hearing in court prior to eviction. *See* 42 U.S.C. § 1437d(k). The federal regulations define "elements of due process" as "an eviction action or a termination of tenancy in a State or local court in which the following procedural safeguards are required: (1) Adequate notice to the tenant of the grounds for terminating the tenancy and for eviction; (2) Right of the tenant to be represented by counsel; (3) Opportunity for the tenant to refute the evidence presented by the PHA including the right to confront and cross-examine witnesses and to present any affirmative legal or equitable defense which the tenant may have; (4) A decision on the merits." 24 C.F.R. § 966.53(c). The Department of Housing and Urban Development has determined that Florida law satisfies due process. *See* PH Due Process Determination: Florida, Directive Number: GCH–0078 (Sept. 4, 1992), attached to Memorandum of Law in Support of Defendant Tampa Housing Authority's Motion for Summary Judgment (Dkt.53) as exhibit I. The Eleventh Circuit has held that Florida eviction proceedings satisfy constitutional procedural due process. *See Colvin v. Housing Auth. of the City of Sarasota*, 71 F.3d 864 (11th Cir.1996); *see also White v. Seattle Housing Auth.*, 1999 WL 595343 (9th Cir. Aug.9, 1999) (unpublished opinion) (Washington unlawful detainer proceedings provide procedural due process). Therefore, the Court will grant summary

---

4. To the extent that Burton attempts to raise a claim of arbitrary enforcement, her deposition testimony does not support such a claim. *See* Burton deposition at pp. 90–92. Furthermore, THA's Drug–Related Criminal Activity Move-out or Eviction Report demonstrates that eviction notices were made across-the-board, regardless of the circumstances of each case, refuting any claim of arbitrary enforcement. *See* Plaintiffs' Response in Opposition to Defendant Tampa Housing Authority's Motion for Summary Judgment, exhibit 14 (Dkt.64).

judgment in favor of THA on Burton's procedural due process claim contained in counts I and III of the complaint.

Finally, the Court concludes that Burton's claim under the Florida Residential Landlord and Tenant Act is preempted to the extent that it conflicts with the Public Housing Act. Therefore, the Court will grant summary judgment in favor of THA on Count V of the complaint.

Accordingly, it is ordered:

1) Plaintiffs' Renewed Motion for Summary Judgment (Dkt.45) is denied.

2) Defendant's Motion for Summary Judgment (Dkt.52) is granted as to Plaintiff Connie Burton.

3) The United States' Motion to Dismiss (Dkt.60) is denied as moot.

4) Plaintiffs' motion for preliminary injunction (Dkt.2) is denied.

5) The Clerk is directed to enter judgment in favor of Defendant Tampa Housing Authority and against Plaintiff Connie Burton.

6) The Clerk is directed to close this file.